**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL PAPPAS,

       Plaintiff,

                                  Case No. 08-11490
v.                                  Hon. Lawrence P. Zatkoff

FORD MOTOR COMPANY

       Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 8, 2009

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Defendant's motion for summary judgment [dkt 28]

and Defendant's motion for judgment [dkt 29] due to Plaintiff's untimely response to Defendant's

motion for summary judgment [dkt 28].  Both motions have been fully briefed, and the Court will

consider Plaintiff's response to Defendant's motion for summary judgment.  The Court finds that

the facts and legal arguments are adequately presented in the parties' papers such that the decision

process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. LR

7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted.  For the

reasons set forth below, Defendant's motion for summary judgment [dkt 28] is GRANTED and

Defendant's motion for judgment [dkt 29] is DENIED AS MOOT.

## II. BACKGROUND

The present case involves a claim brought against Ford Motor Company ("Ford") by former

employee Michael Pappas, who alleges that Ford terminated him in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. On April 2, 2001, Plaintiff took a position as a millwright at Ford's Brownstown plant. Throughout his tenure at the Brownstown plant, Plaintiff, by and large, performed his job in a satisfactory manner, although Ford contends that Plaintiff was occasionally volatile with other employees. As a result of several alcohol related driving offenses, Plaintiff served jail-time at Oakland County Jail on a work-release program from September 11, 2006, to November 13, 2006.

On October 10 and October 12, 2006, Plaintiff arrived to work late. On October 18, 2006, Plaintiff's supervisor called Plaintiff into his office to give Plaintiff a verbal reprimand for the two tardies. While his supervisor was speaking, Plaintiff opened his wallet and said, "here's a dollar, call someone who gives a crap." Def.'s Br. at 2-3. Plaintiff then turned to another supervisor, and said, "I'm going to break it off in your ass." *Id.* at 3. Plaintiff admitted during his deposition that he made the above statements, but said he was not threatening his supervisor, later explaining that the phrase "break it off in your ass" is an industry term for purposefully working slowly to the employer's detriment. Plaintiff was then escorted from the plant and advised that he was suspended pending an investigation. Another employee reported seeing Plaintiff's supervisor circling his finger around his ear, allegedly implying that Plaintiff was mentally impaired.

After he was escorted off Ford's property, Plaintiff went to the Wyandotte Henry Ford Hospital emergency room, complaining of chest pains. The Hospital's records reflect that Plaintiff was suicidal and homicidal, and that he was admitted to the psychiatric ward. Plaintiff called the union and requested that a medical leave of absence form be faxed to the hospital. The form was

faxed to Plaintiff and his physician on October 20, 2006.  Plaintiff was released from the Hospital

the same day, and reported back to Oakland County Jail, where he was placed in solitary

confinement for three weeks.  On October 26, 2006, eight days after Plaintiff had not reported for

work or contacted Ford to have his absences excused, Ford sent Plaintiff a five-day quit letter.  The

five-day quit letter is a procedure provided for in the collective bargaining agreement.  Under the

procedure, an employee who is absent for five consecutive days is sent a five-day quit letter, and if

the employee does not contact Ford within five days to obtain leave, the employee is automatically

terminated.  On November 3, 2006, Ford terminated Plaintiff for failing to respond to the five-day

quit letter.

In December 2006, Plaintiff filed a complaint with the Equal Employment Opportunity

Commission ("EEOC") regarding his termination.  The union grieved Plaintiff's termination, and

Plaintiff was reinstated on March 29, 2007, on the condition that he agree to the following waiver:

> In consideration of my reinstatement, without loss of seniority, as an
> employee of Ford Motor Company, I hereby agree as follows:
>
> (A)   I waive and release all rights, including back pay, which I
>       may have for the period beginning with my discharge and
>       ending with my reinstatement . . .
>
> (D)   I shall be regarded for disciplinary purposes, as being on
>       probation for a period of 12 months beginning on March 29,
>       2007 and understand that I will not have access to the
>       grievance procedure to protest the reasonableness of any
>       penalty, including discharge, I may receive during this period
>       for an infraction of company rules of misconduct; however,
>       I am not prohibited from processing a grievance bearing on
>       the question of guilt or innocence if I believe I am innocent
>       of the charge.

Def.'s Br. Ex. H.  As Plaintiff stated in his deposition, he understood that by signing the waiver, any

violation of a Ford work rule or policy, no matter how minor, could result in his termination. Def.'s

Br. Ex. A. at 217.  Plaintiff signed the waiver with representation by the union.  Plaintiff was then

given a copy of the Brownstown plant's rules of conduct, which he initialed.  The rules of conduct

state that leaving the plant without permission, except for lunch, and overstaying a lunch period can

result in disciplinary action.  Plaintiff's EEOC complaint was closed on April 15, 2007.

Following Plaintiff's return to work, he was tardy once and left without being accounted for

twice.  Ford took no disciplinary action in response.  On August 6, 2007, Plaintiff left the plant

without permission at 10:00 a.m. and returned at 11:21 a.m.  Plaintiff contends that he was only gone

for 50 minutes.  Ford's lunch period was 30 minutes.  Later that day, Plaintiff was informed that he

was suspended pending an investigation for leaving the plant without permission and for overstaying

his lunch period.  On August 8, 2007, Plaintiff was terminated pursuant to the terms of his

reinstatement waiver.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).  The moving party bears the initial

burden of demonstrating the absence of any genuine issue of material fact, and all inferences should

be made in favor of the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to

support the nonmoving party's case."  *Id.* at 325.  Although all inferences must be drawn in favor

of the nonmoving party, this Court bears no obligation to imagine favorable facts where the

nonmoving party has alleged none.  The moving party must also set forth facts sufficient to establish

4

its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A.    FAMILY AND MEDICAL LEAVE ACT

Plaintiff claims that Ford unlawfully interfered with his right to obtain medical leave under the FMLA when Ford terminated him following his time spent at Wyandotte Henry Ford Hospital. Ford responds that Plaintiff waived his rights under the FMLA for past employment actions by signing his reinstatement waiver.

Under the FMLA, an eligible employee is entitled to a total of 12 weeks of leave during any 12-month period to care for a spouse, child, or parent with a "serious health condition" or if the employee has a "serious health condition" that renders the employee unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1)(C)–(D). A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider. 29 C.F.R. § 825.114(a). To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F. 3d 238, 244 (6th Cir. 2004); *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 723–24 (6th Cir. 2003).

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" certain rights created by statute. 29 U.S.C. § 2615(a)(1). Among these statutory rights is the right of an eligible employee, upon the expiration of medical leave, to be restored to the position held by the employee when the leave commenced. To state a prima facie interference claim, a plaintiff must show that: (1) he is an eligible employee; (2) the defendant is a covered

employer; (3) he was entitled to leave under the FMLA; (4) he gave the defendant notice of his intent to take leave; and (5) the defendant denied him FMLA benefits to which he was entitled. *Hoge*, 384 F. 3d at 244; *Arban v. W. Publ'g Co.*, 345 F.3d 390, 401 (6th Cir. 2003); *Cavin*, 346 F.3d at 719.

However, an employee may release FMLA claims based on past employer conduct. 29 C.F.R. § 825.220(d) ("This [subsection prohibiting employers from inducing employees to waive prospective FMLA rights] does not prevent the settlement or release of FMLA claims by employees based on past employer conduct without the approval of the Department of Labor or a court"). "Properly executed waivers of possible employment-related discrimination claims, knowingly and voluntarily made between an employee and his employer will be enforced, absent the typical exceptions for fraud, duress, lack of consideration or mutual mistake." *Sako v. Ohio Dep't of Admin. Servs.*, 278 Fed.Appx. 514, 517 (6th Cir. 2008) (*quoting Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989)).   To determine whether a release is knowing and voluntary, the factors to be considered include:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Sako*, 278 Fed.Appx. at 518 (*quoting Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)).

Plaintiff contends that he did not make a knowing and voluntary waiver, but he only challenges the clarity of the waiver.  Plaintiff claims that he could not have knowingly waived his FMLA rights because the waiver did not specifically include FMLA rights as among those being

waived.  Defendant responds that the language of the waiver was clear in that it covered a broad

range of claims, and that it need not specifically list each and every right being waived in order to

be effective.  The Court agrees that the broad language of the reinstatement waiver operates as a

release of Plaintiff's FMLA claim arising out of his November 2006 termination.  *See Sako*, 278

Fed.Appx. at 516-18 (finding employee's grievance settlement agreement "to waive any and all

rights it may currently have or subsequently possess to receive any reparation, restitution or redress

. . . as a result of the events which formed the basis of the aforementioned grievance" barred the

plaintiff's Title VII claim); *Davis v. Ford Motor Co.*, No. 08-352-C, 2009 WL 577262, at \*2 (W.D.

Ky. Mar. 5, 2009) ("The phrase 'I waive and release any and all rights or claims I may have against

the Ford Motor Company' is broad and includes plaintiff's present Title VII claim.").  Thus,

Plaintiff's FMLA claim arising out of his November 2006 termination should be dismissed as a

matter of law.

**B.**     **AMERICANS WITH DISABILITIES ACT**

Plaintiff contends that he was unlawfully terminated under the ADA based on his

supervisor's perception that he was mentally disabled.   Defendant responds that it terminated

Plaintiff for legitimate, non-discriminatory reasons, which Plaintiff has not shown to be pretextual.

The ADA mandates that "no covered entity shall discriminate against a qualified individual

with a disability. . . ." 42 U.S.C. § 12112(a).  A person seeking relief under the ADA for termination

must establish the following: (1) he is a disabled person within the meaning of the ADA; (2) he is

otherwise qualified to perform the essential functions of his job with or without reasonable

accommodation; and (3) he suffered an adverse employment action because of his disability.  *See*

*Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999).   Once an employee

establishes a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for its action. *Id.* If the employer provides a legitimate, non-discriminatory reason, the burden shifts back to the employee to show that the employer's proffered reason is pretextual. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). An employee can demonstrate pretext by showing that the stated reasons have no basis in fact, were not the actual reasons, or that they were insufficient to explain the employer's actions. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

While it is unclear whether Plaintiff alleges a violation of the ADA based on his November 2006 termination or his August 2007 termination, the Court finds that Plaintiff has failed to show that Ford's legitimate, non-discriminatory reasons for terminating Plaintiff in both instances were pretextual. Ford has shown that it terminated Plaintiff in 2006 based on Plaintiff's failure to respond to the five-day quit letter. While Plaintiff has argued that he was wrongfully terminated under this procedure because he was unable to respond to the letter, he has not produced evidence showing that Ford's stated reason is untrue, insufficient to justify his termination, or lacking a factual basis. Thus, no reasonable finder of fact could conclude that, more likely than not, Ford's proffered reason for terminating Plaintiff in 2006 was pretextual.

Regarding Plaintiff's 2007 termination, Ford has shown that it terminated Plaintiff for overstaying his lunch period, and that it was entitled to terminate Plaintiff for minor disciplinary violations pursuant to Plaintiff's reinstatement waiver. Plaintiff has made no showing that this stated reason is untrue or lacking a factual basis. Instead, Plaintiff argues that Ford's stated reason is insufficient to justify his termination. Plaintiff interprets the clause in his reinstatement waiver, which allowed him to grieve the question of his guilt or innocence of a charge, to mean that he was

8

not subject to discharge for minor violations of Ford's rules of conduct.  The Court does not agree.

The reinstatement waiver states that Plaintiff was on probation for 12 months, and that he would

"not have access to the grievance procedure to protest the reasonableness of any penalty, including

discharge, that [he] may receive during this period for an infraction of company rules." Plaintiff

admitted in his deposition that he understood that by signing the waiver, he could be terminated for

violating any Ford work rule, no matter how minor.  It is true that the terms of the waiver allowed

Plaintiff to grieve the question of his guilt or innocence of a charge, but Plaintiff has not argued that

he is innocent of the charge of overstaying a lunch period.  Plaintiff does not dispute Ford's assertion

that the approved lunch period was 30 minutes, and Plaintiff admits that he left the plant for a period

of at least 50 minutes.  Thus, no reasonable finder of fact could conclude that, more likely than not,

Ford's proffered reason for terminating Plaintiff in 2007 was pretextual.

## C.    TITLE VII: RETALIATION

Plaintiff claims that Ford unlawfully terminated his employment in 2007 for filing a

complaint with the EEOC in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq*.  Ford responds that there is no causal connection between Plaintiff's termination and

the EEOC complaint, and that its reason for terminating Plaintiff was not pretextual.

To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate

by a preponderance of the evidence that (1) he engaged in activity protected under Title VII; (2) the

employer knew that he engaged in the protected activity; (3) the employer took adverse action

against him; and (4) there is a causal connection between the adverse action and the protected

activity. *Abbot v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).  Once an employee

establishes a prima facie case of retaliation, the burden shifts to the employer to offer a legitimate,

non-discriminatory reason for its action. *Id.*   If the employer provides a legitimate, non-discriminatory reason, the burden shifts back to the employee to show that the employer's proffered reason is pretextual. *Id.*  An employee can demonstrate pretext by showing that the stated reasons have no basis in fact, were not the actual reasons, or that they were insufficient to explain the employer's actions.  *Johnson*, 215 F.3d at 573.

Ford has shown that it terminated Plaintiff in 2007 for overstaying his lunch period, and that it was entitled to terminate Plaintiff for minor disciplinary violations pursuant to Plaintiff's reinstatement waiver.  As discussed in Part IV(B), no reasonable finder of fact could conclude that, more likely than not, Ford's proffered reason for terminating Plaintiff in 2007 was pretextual.

## D. TITLE VII: RACE DISCRIMINATION

Since Plaintiff acknowledges that he is not alleging race discrimination, the Court finds that Defendant is entitled to judgment as a matter of law with respect to any race discrimination claims raised by Plaintiff in his pleadings.

### V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [dkt 28] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Judgment [dkt 29] is DENIED AS MOOT.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  December 8, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 8, 2009.

S/Marie E. Verlinde
Case Manager
(810) 984-3290
